**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | Chapter 11 |
| GRAVITAS NW, LLC, | Case No. 26-00199 (ELG) |
| Debtor. | |

**AP DC TOMATO'S LLC'S MOTION FOR ENTRY OF AN ORDER COMPELLING
DEBTOR'S PAYMENT OF POST-PETITION RENT DUE UNDER
UNEXPIRED NON-RESIDENTIAL PROPERTY LEASE
PURSUANT TO 11 U.S.C. § 365(d)(3)**

Creditor AP DC Tomato's LLC ("Landlord") hereby moves ("Motion") for entry of an order pursuant to 11 U.S.C. § 365(d)(3) compelling Gravitas NW, LLC, the debtor and debtor-in-possession ("Debtor") in the above-captioned chapter 11 case ("Chapter 11 Case") to pay post-petition rent obligations due and payable under the unexpired non-residential lease ("Lease") in effect between Debtor and Landlord with respect to real property located at 1401 Okie Street, N.E., Washington, D.C. ("Premises").  In support of the Motion, Landlord respectfully states as follows:

## JURISDICTION AND VENUE

1.       This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This action constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief sought in this Motion is 11 U.S.C. § 365(d)(3), and Rule 9014 of the Federal Rules of Bankruptcy Procedure.

2.       Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### *The Lease Documents*

3.       On or about August 10, 2016, Jemal's Pappas Tomato's L.L.C. ("JPT"), as landlord, and Debtor, as tenant, entered into an Agreement of Lease for the Premises.

4100 MONUMENT CORNER DRIVE · SUITE 420 · FAIRFAX, VA 22030
TEL 703.273.8898    FAX 703.273.8897



4. On or about June 18, 2018, the Agreement of Lease was amended by the First Amendment to Agreement of Lease ("First Amendment"), as more particularly described therein.

5. In or about October 2025, the Agreement of Lease was further amended by the Second Amendment to Deed of Lease ("Second Amendment"), as more particularly described therein.

6. The Agreement of Lease, the First Amendment, and the Second Amendment are collectively referred to herein as the "Lease".

7. As an inducement to, and condition of, JPT entering into the Lease with Debtor, Matthew Baker entered into the Guaranty.

8. The Lease and Guaranty may be referred to collectively hereinbelow as the "Lease Documents". [1]

9. On December 31, 2024, JPT, as assignor, and Landlord, as assignee, entered into an Assignment and Assumption of Leases and Security Deposits ("Assignment"), pursuant to which Landlord, *inter alia*, accepted, obtained, and assumed all of JPT's rights, title and interests in the Lease Documents.

10. Under the Lease, the Base Rent is currently equal to the greater of $2,000 per month or 7% of Debtor's gross sales, provided that in no event shall the Base Monthly Rent exceed $9,500 per month. Second Amendment, ¶3.

11. The Lease also obligates the Debtor to pay additional rent ("Additional Rent" and together with Minimum Annual Rent, "Rent") which includes the Debtor's pro rata share of operating expenses and real estate taxes with respect to the Premises. Second Amendment, ¶4.

---

[1] Copies of the Lease Documents are available upon request.

4100 MONUMENT CORNER DRIVE · SUITE 420 · FAIRFAX, VA 22030
TEL 703.273.8898    FAX 703.273.8897

CameronIngersollRoche

12.    Rent is payable in advance on the first day of each calendar month, and is late and subject to interest and a late charge if not received by Landlord within 10 days of when it is due. Lease, ¶23(C).

13.    Pursuant to the terms of the Lease, the Debtor was required to make Rent payments, but has, to date, failed to make Rent payments as required under the Lease from as early as January 2025.

### The Chapter 11 Case and Debtor's Failure to Pay April Stub Rent and May Rent

14.    The Debtor continues to occupy the Premises, but failed to pay post-petition rent for April 2026 ("April Stub Rent"), May 2026 ("May Rent"), and June 2026 ("June Rent").

15.    The April Stub Rent is $892.40[2], May Rent is $3,346.64 and June Rent is $3,346.64, which have not been paid as of the filing of this Motion.

### RELIEF REQUESTED

16.    Landlord respectfully requests that the Court enter the proposed order attached hereto compelling the Debtor's (i) prompt payment of April Stub Rent, May Rent and June Rent as required by section 365(d)(3) of the Bankruptcy Code and (ii) performance of all post-petition obligations under the Lease going forward unless and until the Lease is either rejected and the Premises surrendered, or (after the cure of outstanding defaults) assumed, or assumed and assigned pursuant to Court approval.

---

[2] The April Stub is calculated as follows: $3,346.64 (total April rent) divided by 30 days = $111.55 per day times 8 days (*i.e.*, April 22 through 30, 2026) = $892.40.

## ARGUMENT

**A. Section 365(d)(3) of the Bankruptcy Code Mandates that the Debtor Timely Pay All Post-Petition Rent and Obligations Arising Under the Lease.**

17. The statutory mandate of section 365(d)(3) is unambiguous: debtors in possession "shall timely perform all of the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3); *see In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001) ("The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms."); *In re Pac-W. Telecomm, Inc.*, 377 B.R. 119, 124 (Bankr. D. Del. 2007) (same); *In re Dutch Inns of America, Inc.*, 124 B.R. 1 (Bankr. D.D.C. 1991) (same).

18. The Debtor's obligations under section 365(d)(3) of the Bankruptcy Code are independent of, and not subject to, the requirements for the allowance of administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code. *See In re Goody's Family Clothing Inc.*, 610 F.3d 812, 817 (3d Cir. 2010) ("[Section] 365(d)(3) is best understood as an exception to the general procedures of § 503(b)(1) that ordinarily apply."). Accordingly, courts construe this language to require performance of all obligations that come due under the lease at their contract rate during the post-petition, pre-assumption/rejection period, without a § 503(b)(1) "benefit" analysis. *See In re Dutch Inns of America, Inc.*, 124 B.R. at 1 (landlord's entitlement to post-petition rent "measured by the terms of the lease" under § 365(d)(3)); *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 399 (Bankr. S.D.N.Y. 2001) (same); *In re Pudgie's Dev. of N.Y., Inc.*, 202 B.R. 832, 836–38 (Bankr. S.D.N.Y. 1996) (collecting cases and adopting the majority view that § 365(d)(3) requires payment of full contract rent "regardless of any benefit to the estate").

4

19.     Congress intended section 365(d)(3) to strike "a balance of equities." *In re Goody's Fam. Clothing, Inc.*, 401 B.R. 656, 663 (D. Del. 2009), *aff'd sub nom. In re Goody's Fam. Clothing Inc.*, 610 F.3d 812 (3d Cir. 2010). While the landlord's ability to evict its debtor tenant is restricted during the time prescribed for the debtor to determine whether to assume or reject, "[o]n the other hand, a debtor-tenant must pay rent during this interim period; the landlord need not pursue a burdensome administrative expense claim to recover what [it] is owed under the lease." *Id.*

20.     The structure of section 365(d) as a whole reflects clear legislative intent that during the "breathing spell" provided after the petition date while the debtor decides whether to assume or reject, the landlord is not to be forced into involuntary, interest-free financing of the reorganization. *See In re Circuit City Stores, Inc.*, 447 B.R. 475, 508 (Bankr. E.D. Va. 2009) ("The intent behind the enactment of § 365(d)(3) was to prevent landlords from becoming involuntary creditors of the debtor's estate") (internal quotation omitted).

21.     Based on the clear Congressional intent of section 365(d)(3), a debtor is not permitted to unilaterally defer post-petition lease obligations. Rather, section 365(d)(3) means what it says: a debtor's timely performance of lease obligations arising post-petition is compulsory. As such, courts enforce section 365(d)(3)'s mandate of timely performance by compelling prompt payment of unpaid post-petition rent (or conditioning continued use of the premises on such payment). *See In re McCabe*, 212 B.R. 21, 22 (Bankr. D. Mass. 1996) (explaining that "immediate payment" is required under section 365(d)(3) because "[w]here the statute expressly obligates the trustee to 'timely perform,' the remedy is implicit: performance of the obligation. Absent this remedy, the requirement of timely performance is, for the most part, eviscerated.").

22.     Courts have further held that section 365(d) requires debtor to pay stub rent (*i.e.* the prorated rent accruing from the date of the petition through the end of that month). *See In re Stone*

4100 MONUMENT CORNER DRIVE · SUITE 420 · FAIRFAX, VA 22030
TEL 703.273.8898     FAX 703.273.8897

*Barn Manhattan LLC*, 398 B.R. 359, 368 (Bankr. S.D.N.Y. 2008).

23.     The Debtor has remained in possession of the Premises post-petition, yet has not paid April Stub Rent, May Rent and June Rent due under the Lease.  While section 365(d)(3)(A) affords a debtor faced with an early case cash availability timing issue to move for an extension of its obligation to meet all post-petition lease-imposed obligations until 60 days following the petition date, the Debtor here has made no such motion.

24.     The Debtor cannot be permitted to disrupt the balance struck by section 365(d)(3) by retaining the protections of the automatic stay and the value of continued use of the Premises, while simultaneously disregarding its obligation of timely performance under the Lease. The Debtor's failure to pay post-petition rent as it comes due under the Lease is therefore precisely the kind of noncompliance section 365(d)(3) was designed to remedy through an order compelling performance.

25.     Accordingly, Landlord is entitled to an order (i) compelling prompt payment of the April Stub Rent, May Rent, June Rent and related post-petition charges, and (ii) directing the Debtor to remain current on all Lease obligations going forward unless and until the Lease is rejected (with surrender of the Premises) or, after cure, assumed or assumed and assigned with Court approval.

**WHEREFORE**, AP DC Tomato's LLC respectfully requests that the Court enter an order: (i) compelling prompt payment of the April Stub Rent, May Rent, June Rent, and related post-petition charges as required by section 365(d)(3) of the Bankruptcy Code; (ii) directing the Debtor to remain current on all Lease obligations going forward unless and until the Lease is rejected (with surrender of the Premises) or, after cure, assumed or assumed and assigned with Court approval; and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  June 16, 2026                                        Respectfully submitted,

AP DC TOMATO'S LLC
By Counsel


/s/ Eric S. Waldman
Eric S. Waldman, Esq. (D.C. Bar No. 1046308)
Cameron Ingersoll Roche PLLC
4100 Monument Corner Drive, Suite 420
Fairfax, Virginia 22030
(703) 273-8898
(703) 273-8897 (facsimile)
ewaldman@cirlaw.com
*Counsel for Creditor AP DC Tomato's LLC*

7

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 16, 2026, he caused to be served a true and correct copy of the foregoing to be filed and served via the Court's CM/ECF system on all parties registered to receive electronic notices in this case.

/s/ Eric S. Waldman
Eric S. Waldman, Esq. (D.C. Bar No. 1046308)



8