**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:** | \| |
| | \| |
| **GRAVITAS NW LLC,** | \|         **Case No.: 26-00199-ELG** |
| **Debtor.** | \| |
| | \|         **Chapter 11** |
| | \| |

## DEBTOR'S RESPONSE IN OPPOSITION TO UNITED STATES TRUSTEE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, CONVERT CASE TO CHAPTER 7

**COMES NOW** Gravitas NW LLC ("Gravitas" or the "Debtor"), by and through undersigned counsel, respectfully submits this Response in Opposition to the United States Trustee's Motion to Dismiss or, in the Alternative, Convert Case to Chapter 7 (the "Motion"), and in support thereof states as follows:

1. This Chapter 11 case concerns the preservation of a nationally recognized restaurant whose value extends far beyond the liquidation value of its furniture, fixtures, equipment, inventory, and other tangible assets. The Debtor respectfully submits that dismissal at this stage would unnecessarily destroy substantial going-concern value, significantly diminish recoveries available to creditors, terminate active restructuring efforts, and frustrate the rehabilitative purposes underlying Chapter 11 of the Bankruptcy Code.

2. Gravitas commenced this Chapter 11 proceeding under extraordinary and exigent circumstances after the District of Columbia Office of Tax and Revenue ("OTR") seized substantially all of the restaurant's operating assets in preparation for a public tax auction. The seized property included essential furniture, fixtures, kitchen equipment, office

equipment, artwork, wine inventory, electronics, and other assets necessary for continued restaurant operations. Absent immediate bankruptcy relief, the auction would have permanently eliminated the Debtor's ability to operate as a going concern and destroyed years of goodwill, customer relationships, employee investment, and brand recognition.

3. The United States Trustee's Motion understandably focuses upon certain administrative deficiencies identified during the early stages of this emergency Chapter 11 proceeding. The Debtor appreciates the important oversight role performed by the Office of the United States Trustee and has worked diligently and in good faith to address each concern raised. Since the filing of the Motion, the Debtor has continued to supplement and amend its schedules and Statement of Financial Affairs, file Monthly Operating Reports, provide financial information, cooperate with requests from the United States Trustee, pursue approval of debtor's counsel, establish appropriate banking relationships, investigate potential estate assets, and continue developing a viable plan of reorganization.

4. However, this Motion necessarily evaluates the case primarily through the lens of administrative compliance rather than the broader economic realities that gave rise to this filing and the substantial progress that has occurred since the Petition Date. This is not a case involving a business with no realistic prospect of rehabilitation. Rather, it involves a well-established, nationally recognized restaurant whose temporary financial distress resulted from an extraordinary convergence of circumstances, including the unprecedented effects of the COVID-19 pandemic, continuing inflationary pressures, dramatically increased labor and food costs, accumulated tax liabilities, and ultimately the governmental seizure of substantially all of its operating assets despite multiple attempts to reach a settlement.

5. Unlike many Chapter 11 cases in which no meaningful source of recovery exists beyond liquidation, the Debtor has identified multiple significant assets and opportunities that may materially increase creditor recoveries. These include a substantial pending insurance claim arising from damage allegedly sustained to estate property during OTR's seizure, transportation, and storage of the Debtor's assets; ongoing restructuring discussions memorialized in a term sheet with an experienced hospitality investment group; preservation of valuable leasehold rights; continued goodwill associated with the Gravitas brand; and the nationally recognized culinary reputation of Chef Matt Baker, whose continued involvement remains central to the Debtor's rehabilitation efforts.

6. Gravitas is not an ordinary restaurant. Under Chef Matt Baker's leadership, Gravitas earned Michelin Star recognition in one of the most competitive culinary markets in the United States. That recognition reflects years of exceptional culinary achievement and has created substantial intangible value in the form of goodwill, customer loyalty, reservation demand, vendor relationships, trained employees, intellectual property, and brand recognition. Those assets cannot be replicated through liquidation and would be permanently lost if this Chapter 11 case were dismissed before the Debtor has a reasonable opportunity to complete its restructuring efforts.

7. The evidence submitted with this Response—including the Declaration of Matt Baker, documentation regarding the pending insurance claim, the Meraki Hospitality term sheet, and the Debtor's Monthly Operating Reports—demonstrates that this case is progressing toward rehabilitation rather than abandonment. The Debtor has not sought Chapter 11 merely to delay creditors. To the contrary, the Debtor has actively pursued every reasonable avenue to maximize estate value, preserve jobs, maintain the possibility of

reopening Gravitas, and formulate a confirmable Chapter 11 plan that provides creditors with recoveries substantially greater than those likely available through immediate liquidation.

8.  Chapter 11 exists to preserve economically viable businesses whose going-concern value substantially exceeds the value of their individual assets sold at liquidation. This case presents precisely those circumstances. Dismissal would prematurely terminate a viable restructuring effort, impair potential insurance recoveries, discourage ongoing investor participation, eliminate the opportunity to preserve one of Washington, D.C.'s most recognized culinary institutions, and likely reduce the recoveries ultimately available to creditors.

**BACKGROUND OF THE DEBTOR AND THE 101 HOSPITALITY ENTERPRISE**

9.  Gravitas NW LLC ("Gravitas" or the "Debtor") is one of several affiliated restaurant operating companies owned through **101 Hospitality LLC**, a hospitality holding company established to provide centralized ownership, executive management, and administrative support for Chef Matt Baker's affiliated restaurant businesses.

10. Contrary to what might be inferred from a review of the Debtor's financial statements alone, 101 Hospitality LLC is not itself an operating restaurant. Rather, it functions as the parent holding company responsible for providing centralized business administration and shared management services that benefit each affiliated operating company while reducing duplicative administrative costs.

11. Among the services coordinated through 101 Hospitality LLC are accounting oversight, financial management, insurance administration, payroll processing, human resources, purchasing, vendor coordination, marketing, operational planning, strategic management,

licensing, and other administrative functions common within multi-entity hospitality organizations.

12. The affiliated operating companies presently include:

13. Gravitas NW LLC, Michele's, located within the Eaton Hotel and Baker's Daughter.

14. Each operating company is maintained as a separate legal entity with its own books and records, bank accounts, tax reporting obligations, contracts, leasehold interests, assets, liabilities, employees, vendors, and creditor relationships. The use of separate limited liability companies is customary within the hospitality industry and permits each restaurant to operate independently while benefiting from centralized administrative efficiencies through the holding company.

15. Importantly, only Gravitas NW LLC is presently a debtor before this Court. Neither 101 Hospitality LLC, Michele's, nor Baker's Daughter has filed for bankruptcy protection. Each continues to exist as a separate legal entity with separate operations and obligations.

16. Understanding this organizational structure is important because it demonstrates that Gravitas is not an isolated restaurant operating without support. Rather, it is part of a broader hospitality enterprise whose centralized administrative structure allows management to coordinate financial oversight, insurance, vendor relationships, purchasing, marketing, and strategic planning across multiple restaurants while preserving the legal separateness of each operating company.

**Chef Matt Baker and the Gravitas Brand**

17. Chef Matt Baker has devoted decades to building one of the Washington metropolitan area's most respected culinary brands. Through his leadership, Gravitas earned Michelin

5

Star recognition—an honor awarded to less than one percent of restaurants throughout the Washington metropolitan region.

18. That recognition reflects years of consistent excellence in cuisine, hospitality, and service. More importantly for purposes of this Chapter 11 proceeding, it represents substantial economic value belonging to the bankruptcy estate.

19. The value of Gravitas extends far beyond its tangible assets. It includes an established customer base, reservation demand, vendor relationships, trained employees, proprietary recipes and culinary concepts, intellectual property, media recognition, private dining opportunities, catering relationships, goodwill, and the reputation associated with Chef Matt Baker and the Gravitas name.

20. Those intangible assets cannot be duplicated through liquidation. If the restaurant were permanently closed, much of that value would disappear, substantially reducing the recovery available to creditors.

21. For that reason, preserving Gravitas as a going concern provides a significantly greater opportunity to maximize estate value than liquidation of the restaurant's furniture, equipment, and inventory alone.

### Extraordinary Circumstances Leading to This Chapter 11 Filing

22. The Debtor's financial distress did not arise from a fundamentally flawed business model. Rather, it resulted from an extraordinary convergence of economic events affecting the restaurant industry nationwide.

23. Like thousands of restaurants throughout the United States and in the District of Columbia, Gravitas experienced unprecedented disruption during and after the COVID-19 pandemic. Government-imposed restrictions on indoor dining, reduced consumer

demand, supply chain disruptions, inflation, labor shortages, dramatically increased food costs, increased utility expenses, and escalating operating costs significantly impaired profitability even after pandemic restrictions were lifted.

24. Despite those challenges, Gravitas continued operating and remained committed to its employees, customers, vendors, landlords, and taxing authorities. Management consistently sought to preserve the business and satisfy its financial obligations while navigating an operating environment unlike any previously experienced within the hospitality industry.

25. Despite those efforts, accumulated tax liabilities ultimately resulted in enforcement actions by the District of Columbia Office of Tax and Revenue. Prior to filing this Chapter 11 case, the Debtor attempted to resolve those obligations through discussions and negotiations with OTR. Those efforts did not produce a consensual resolution.

26. OTR proceeded with enforcement actions that culminated in the seizure of substantially all of Gravitas' operating assets, including furniture, fixtures, kitchen equipment, artwork, wine inventory, electronics, office equipment, and numerous other items essential to the operation of the restaurant.

27. The Debtor respectfully submits that the Chapter 11 filing became an economic necessity. Without bankruptcy protection, the scheduled tax auction would have permanently eliminated Gravitas' ability to reopen, destroyed years of accumulated goodwill, displaced employees, and substantially reduced the value available for creditor recoveries.

28. The Bankruptcy Code exists to prevent precisely that result where rehabilitation remains reasonably achievable.

**The Debtor's Reorganization Efforts**

29. Since the commencement of this Chapter 11 case, the Debtor has not remained idle. Rather, it has actively pursued multiple avenues designed to maximize value for the estate and improve recoveries for creditors.

30. Debtor has continued to cooperate fully with the Office of the United States Trustee by providing financial information, filing Monthly Operating Reports, amending schedules and statements, and addressing administrative matters identified during the course of the case.

31. Debtor has submitted an insurance claim arising from damage allegedly sustained to restaurant property during the seizure, transportation, handling, and storage of the Debtor's assets. As reflected in the accompanying exhibits, that claim remains pending and represents a potentially significant estate asset that may materially increase recoveries available to creditors.

32. Debtor and its affiliated management have entered into discussions with Meraki Hospitality concerning a proposed investment and restructuring of the restaurant enterprise.

33. Discussions have progressed to a written term sheet, which is attached as an exhibit to Matt Baker's Declaration. While the transaction remains subject to due diligence, definitive documentation, Court approval where applicable, and satisfaction of customary closing conditions, it demonstrates that experienced hospitality investors recognize continuing value in Gravitas and believe that the restaurant can successfully resume operations through an appropriately structured recapitalization.

8

34. Debtor has reached favorable terms with the landlord to affirm its lease, which must be presented to the court for approval.

35. Debtor has pursued a realistic and good-faith strategy to preserve going-concern value, maximize creditor recoveries, and return Gravitas to productive operations rather than simply delay creditors or prolong these proceedings.

**THE DEBTOR HAS ACTED IN GOOD FAITH AND HAS CONTINUALLY MOVED THIS CASE TOWARD REORGANIZATION**

36. The United States Trustee correctly notes that debtors-in-possession have significant responsibilities under Chapter 11. Gravitas does not dispute those obligations. From the commencement of this case, the Debtor has recognized its fiduciary duties to creditors, the Court, and the bankruptcy estate and has undertaken substantial efforts to comply with those obligations while simultaneously attempting to preserve the business from permanent liquidation.

37. Unlike cases in which debtors abandon their reorganization efforts or fail to participate meaningfully in the bankruptcy process, the record in this case demonstrates continuous progress toward rehabilitation. Since the Petition Date, the Debtor has worked diligently with counsel, the Office of the United States Trustee, creditors, financial professionals, insurers, and prospective investors to address administrative matters while simultaneously preserving valuable estate assets and pursuing a feasible path toward reorganization.

38. Among other things, the Debtor has:

- prepared and filed amended Schedules and Statements of Financial Affairs to provide additional information and improve the accuracy of the record;

- prepared and filed the April Monthly Operating Report, with the May Operating Report being filed tomorrow, along with supplemented financial information as additional documentation became available;

- continued cooperating with requests from the Office of the United States Trustee and supplied information regarding the Debtor's business operations, banking, insurance, assets, liabilities, and financial affairs;

- investigated and documented a substantial insurance claim arising from damage sustained to estate property during the seizure, transportation, and storage of the Debtor's operating assets;

- actively pursuing the turnover and recovery of estate property necessary to preserve value for creditors;

- continued negotiations with a hospitality investment group concerning a proposed recapitalization and restructuring of the restaurant enterprise within the Debtor's Chapter 11 Plan;

- prepared and filed an Application to Employ counsel to ensure continued administration of this Chapter 11 case in compliance with the Bankruptcy Code; and

- continued developing a feasible strategy to reopen Gravitas and generate future operating revenue capable of funding distributions to creditors.

39. These actions are not consistent with a debtor seeking merely to delay creditors or prolong the bankruptcy process. Rather, they demonstrate an active and continuing effort to preserve estate assets, maximize value, and formulate a confirmable Chapter 11 plan.

40. The Bankruptcy Code does not require that a debtor have every aspect of a reorganization completed immediately upon filing. Particularly in cases commenced under emergency circumstances to prevent the imminent liquidation of operating assets, administrative compliance frequently occurs over time as records are assembled, professionals are employed, financial information is supplemented, and restructuring opportunities are evaluated. That is precisely what has occurred here.

41. Importantly, the progress made since the filing of the Trustee's Motion further demonstrates that dismissal at this stage would be premature. The Debtor has continued to cure administrative deficiencies, identify additional estate assets, advance restructuring efforts, and develop sources of funding that did not exist at the outset of this case. The Court should therefore evaluate the present status of the Chapter 11 case—not merely the circumstances existing on the date the Motion was filed.

**THE TRUSTEE'S ALLEGATIONS DO NOT ESTABLISH THAT DISMISSAL IS IN THE BEST INTERESTS OF CREDITORS**

42. The Bankruptcy Code requires more than the identification of technical or administrative deficiencies. The Court must determine whether "cause" exists and, if so, whether dismissal is in the best interests of creditors and the estate. Even where cause is established, dismissal is not mandatory where unusual circumstances demonstrate that continuation of the Chapter 11 case is more likely to maximize value for creditors.

43. Viewed in that context, the deficiencies identified by the Trustee do not warrant dismissal of this case.

## Monthly Operating Reports

44. The Debtor acknowledges the importance of timely Monthly Operating Reports and has continued filing and supplementing those reports as additional information became available.

45. The purpose of Monthly Operating Reports is to provide transparency concerning the Debtor's financial affairs. The April 2026 Monthly Operating Report has been filed; the June Monthly Operating Report will be filed on July 2, 2026. The Trustee and the Court now possess substantially more financial information than existed at the outset of this emergency filing, and the Debtor remains committed to continued compliance throughout this proceeding.

46. Any delay in filing reports occurred during the period immediately following the governmental seizure of substantially all of the Debtor's operating assets, records, computers, and business property. Under those extraordinary circumstances, assembling complete financial information necessarily required additional time. Those circumstances have now substantially improved, and continued compliance is expected.

## Schedules and Statement of Financial Affairs

47. The Trustee also raises concerns regarding amendments to the Debtor's Schedules and Statement of Financial Affairs.

48. The Debtor has addressed those concerns through amendments and supplemental disclosures. As additional information became available, the Debtor elected to amend its

filings rather than allow potentially incomplete information to remain before the Court. Such amendments reflect good-faith compliance with the Debtor's continuing duty of disclosure and should not be viewed as evidence of bad faith.

49. Indeed, bankruptcy schedules and statements are frequently amended as debtors obtain additional records, consult professionals, and reconcile financial information. The Debtor has attempted to provide the Court with the most complete and accurate information available and will continue supplementing disclosures if additional information becomes known.

**Banking and Financial Administration**

50. The Trustee further identifies issues concerning banking arrangements and financial administration.

51. Those matters likewise arose during the extraordinary circumstances surrounding the emergency filing and the seizure of the Debtor's operating assets. Since filing, the Debtor has continued working with counsel, financial institutions, and the Office of the United States Trustee to ensure compliance with applicable banking requirements and debtor-in-possession obligations.

52. Any administrative issues relating to banking are administrative matters capable of correction and do not demonstrate that the Debtor lacks a reasonable likelihood of rehabilitation.

**Employment of Counsel**

53. The Trustee also notes that counsel had not yet been approved at the time the Motion was filed.

54. The Debtor has since filed an Application seeking approval of Walton Law Group as counsel effective as of the Petition Date. That Application fully discloses counsel's connections, explains the relationship between Gravitas and its affiliated entities, addresses the absence of any present conflict of interest, and demonstrates why continued representation by counsel is in the best interests of the bankruptcy estate.

## DISMISSAL WOULD SUBSTANTIALLY PREJUDICE CREDITORS BECAUSE THE DEBTOR POSSESSES SIGNIFICANT GOING-CONCERN VALUE AND A REALISTIC OPPORTUNITY FOR REHABILITATION

55. The fundamental purpose of Chapter 11 is to preserve economically viable businesses where rehabilitation is reasonably achievable and where continued operations are likely to produce greater recoveries for creditors than immediate liquidation. This case exemplifies those principles.

56. The value of Gravitas is not limited to its furniture, fixtures, equipment, inventory, or other tangible assets. Rather, the Debtor possesses substantial intangible assets that have been developed over many years and that can only be preserved through continued operation as a going concern.

57. Among those assets are the Gravitas trade name, customer goodwill, established vendor relationships, trained employees, proprietary culinary concepts, intellectual property, reservation history, brand recognition, and the nationally recognized reputation of Chef Matt Baker. Collectively, these assets represent a significant component of the estate's value. Unlike restaurant equipment or inventory, they cannot be sold at auction or readily recreated after liquidation. Once destroyed, they are permanently lost.

58. The Debtor respectfully submits that the liquidation of these intangible assets would substantially reduce the value of the bankruptcy estate and materially diminish recoveries available to creditors.

## Michelin Recognition Represents Significant Estate Value

59. Gravitas achieved Michelin Star recognition through years of exceptional culinary performance and operational excellence. Michelin recognition is among the highest distinctions available within the hospitality industry and is awarded to only a limited number of restaurants in the Washington metropolitan region.

60. That recognition has generated substantial economic value for the estate, including increased customer demand, enhanced reservation opportunities, greater media exposure, expanded private dining opportunities, stronger vendor relationships, and increased overall brand recognition.

61. These intangible assets exist only so long as the business itself survives.

62. Dismissal of this Chapter 11 case would almost certainly eliminate the opportunity to preserve those assets for the benefit of creditors.

## The Pending Insurance Claim Represents a Significant Potential Estate Asset

63. In addition to the Debtor's operating business, the estate possesses another potentially significant source of recovery.

64. As reflected in the exhibits accompanying this Response, the Debtor has submitted an insurance claim arising from damage allegedly sustained during the seizure, transportation, handling, and storage of the Debtor's property following enforcement actions undertaken by the District of Columbia Office of Tax and Revenue.

65. The damaged property includes restaurant furniture, fixtures, kitchen equipment, artwork, wine inventory, electronics, office equipment, and other business assets. The estimated amount of the claim is substantial and, if resolved favorably, may provide significant funds available to the bankruptcy estate.

66. Unlike a liquidation outside of bankruptcy, continued administration of this Chapter 11 case allows the Debtor to pursue that claim in an organized manner while preserving the proceeds for the benefit of creditors pursuant to a confirmed plan. Accordingly, dismissal at this stage could materially impair an important source of creditor recovery.

**The Meraki Hospitality Transaction Demonstrates a Realistic Opportunity for Rehabilitation**

67. The Debtor has also demonstrated that reorganization is not merely speculative.

68. As evidenced by the accompanying term sheet, the Debtor and its affiliated management have entered into active restructuring discussions with Meraki Hospitality concerning a proposed recapitalization of the restaurant enterprise.

69. Although the proposed transaction remains subject to customary due diligence, negotiation of definitive agreements, Court approval where required, financing contingencies, and satisfaction of closing conditions, the existence of a signed term sheet demonstrates considerably more than a generalized hope of obtaining future financing.

70. Rather, it reflects that experienced hospitality professionals have independently evaluated Gravitas and believe the business possesses sufficient value to justify continued negotiations concerning investment and operational restructuring.

16

71. If consummated, the proposed transaction is expected to provide new capital, experienced operational support, improved financial stability, and additional resources available to fund a Chapter 11 plan and maximize creditor recoveries.

72. While no outcome can be guaranteed, the existence of ongoing investment negotiations materially distinguishes this case from Chapter 11 proceedings in which no realistic path toward rehabilitation exists.

### The Holding Company Structure Further Supports Reorganization

73. The Trustee has appropriately examined transfers between Gravitas and 101 Hospitality LLC.

74. As explained in the Declaration of Matt Baker, those entities operate within a centralized hospitality management structure common throughout the restaurant industry.

75. 101 Hospitality LLC functions as the holding company responsible for shared administrative services, including accounting oversight, payroll administration, insurance coordination, vendor management, purchasing, marketing, strategic planning, and operational support.

76. Each restaurant nevertheless maintains separate legal existence, separate financial records, separate tax reporting, separate creditor relationships, and separate contractual obligations.

77. The management services provided through 101 Hospitality permit the affiliated operating companies to reduce overhead expenses and improve operational efficiency while preserving separate legal entities.

78. The Debtor respectfully submits that this organizational structure enhances, rather than diminishes, the prospects for successful rehabilitation by providing centralized management resources capable of assisting Gravitas throughout the restructuring process.

**Creditors Benefit More From Reorganization Than Liquidation**

79. Ultimately, the question before the Court is not simply whether administrative deficiencies existed during the early stages of this case. Rather, the question is whether creditors are more likely to receive meaningful recoveries through continued Chapter 11 proceedings than through dismissal.

80. The Debtor respectfully submits that the answer is yes.  Continued Chapter 11 administration preserves multiple potential sources of recovery unavailable in an immediate liquidation, including:

1.  preservation of the Gravitas brand and goodwill;

2.  continued value associated with Michelin recognition;

3.  the pending insurance claim;

4.  ongoing restructuring discussions with Meraki Hospitality;

5.  future operating revenue following reopening;

6.  centralized administrative support provided through 101 Hospitality;

7.  continued employment opportunities for restaurant staff; and

8.  the ability to propose and confirm a plan of reorganization funded through multiple sources rather than liquidation proceeds alone.

18

81. Dismissal would likely eliminate many of these opportunities before they can be realized.

## THE UNITED STATES TRUSTEE HAS NOT ESTABLISHED THAT DISMISSAL IS IN THE BEST INTERESTS OF CREDITORS OR THE ESTATE

82. The Bankruptcy Code provides that, upon the request of a party in interest, the Court may dismiss or convert a Chapter 11 case for cause if doing so is in the best interests of creditors and the estate. The statute, however, does not require dismissal merely because administrative deficiencies existed at some point during the case. Rather, the Court must examine the totality of the circumstances, including the Debtor's good faith, the progress of the reorganization, the existence of a reasonable likelihood of rehabilitation, and whether dismissal will maximize value for creditors.

83. The decision whether to dismiss or convert a Chapter 11 case remains committed to the sound discretion of the bankruptcy court. That discretion should be exercised in light of the overarching purpose of Chapter 11—to preserve economically viable businesses where rehabilitation offers creditors a greater recovery than liquidation.

84. The Debtor respectfully submits that, when the present circumstances of this case are considered in their entirety, dismissal would frustrate rather than advance those objectives.

### The Record Demonstrates a Continuing Good-Faith Effort to Reorganize

85. Good faith is measured not by perfection, but by whether the debtor has honestly and diligently utilized the protections of Chapter 11 for a legitimate reorganizational purpose.

86. Here, every material action undertaken by the Debtor demonstrates an intent to rehabilitate the business rather than delay creditors.

87. The Debtor filed this case only after OTR seized substantially all operating assets and scheduled those assets for public auction.

88. Following the filing, the Debtor has:

1. cooperated with the Office of the United States Trustee;

2. amended schedules and statements;

3. filed Monthly Operating Reports;

4. investigated and documented substantial insurance claims;

5. pursued recovery of estate assets;

6. sought approval of bankruptcy counsel;

7. engaged in restructuring negotiations with Meraki Hospitality;

8. continued evaluating operational improvements; and

9. prepared for the formulation of a confirmable Chapter 11 plan.

89. These actions are inconsistent with a debtor seeking merely to delay creditors. Instead, they reflect an ongoing and substantial effort to preserve estate value and maximize recoveries through reorganization.

**Administrative Deficiencies Have Been Addressed or Are Being Addressed**

90. The Trustee's Motion identifies several administrative concerns. The Debtor does not minimize those concerns.

91. However, virtually all of the issues identified by the Trustee are administrative matters that either have been corrected, substantially corrected, or continue to be addressed through the ordinary administration of this Chapter 11 case.

92. Courts have consistently recognized that administrative deficiencies alone do not necessarily warrant dismissal where the debtor demonstrates continuing progress, cooperation with the Trustee, and a realistic opportunity for rehabilitation.

93. Here, the Debtor has consistently responded to requests for information, supplemented disclosures, and continued improving compliance throughout the administration of this case.

94. The Bankruptcy Code encourages debtors to correct deficiencies—not to forfeit otherwise viable reorganizations because administrative matters required additional time following an emergency filing.

**Rehabilitation Is Reasonably Likely**

95. The concept of rehabilitation refers to the restoration of a viable business—not merely confirmation of a plan.

96. The evidence before the Court demonstrates that Gravitas possesses a realistic opportunity for rehabilitation.

97. Specifically:

1. the Debtor possesses substantial going-concern value;

2. the Gravitas brand remains intact;

3. Chef Matt Baker continues leading restructuring efforts;

4. a pending insurance claim represents a potentially significant estate asset;

21

5. Meraki Hospitality has executed a restructuring term sheet and continues negotiations;

6. centralized management through 101 Hospitality remains available to support operations;

7. the Debtor intends to reopen Gravitas during Fall 2026, subject to Court approval and completion of restructuring efforts.

98. Taken together, these facts demonstrate far more than a speculative hope of rehabilitation.

99. They demonstrate an identifiable pathway through which the Debtor may restore operations, generate future revenue, and provide greater recoveries to creditors than liquidation.

**Dismissal Would Prematurely Terminate a Viable Reorganization**

100.    The Trustee's Motion asks the Court to terminate this Chapter 11 case at precisely the moment when the Debtor's restructuring efforts are beginning to produce tangible opportunities.

101.    Dismissal now would likely:

1. terminate ongoing investor negotiations;

2. jeopardize the pending insurance recovery;

3. eliminate the opportunity to preserve Michelin-recognized goodwill;

4. impair leasehold value;

5. reduce recoveries available to creditors;

6. permanently eliminate the possibility of reopening Gravitas as an operating business.

102.　By contrast, permitting this Chapter 11 case to continue preserves each of those opportunities while allowing the Court to maintain oversight of the reorganization process.

## EVEN IF THE COURT DETERMINES THAT "CAUSE" EXISTS, UNUSUAL CIRCUMSTANCES WARRANT DENIAL OF THE MOTION

103.　Without conceding that dismissal is appropriate, the Debtor respectfully submits that this case presents unusual circumstances demonstrating that dismissal would not be in the best interests of creditors or the bankruptcy estate.

104.　The Bankruptcy Code recognizes that dismissal is not appropriate in every case where administrative deficiencies or other grounds for "cause" may exist. Rather, where unusual circumstances demonstrate that continuation of the Chapter 11 proceeding is more likely to maximize value for creditors, the Court retains discretion to permit the reorganization to continue.

105.　This case presents several unusual circumstances that, considered collectively, distinguish it from the ordinary Chapter 11 case.

### Gravitas Possesses Exceptional Going-Concern Value That Cannot Be Preserved Through Liquidation

106.　Unlike a business whose principal value consists of tangible assets, Gravitas derives much of its value from intangible assets that exist only so long as the business itself survives.

107.　Those assets include:

1. Michelin Star recognition;

2. nationally recognized brand identity;

3. established customer goodwill;

4. trained culinary and hospitality personnel;

5. vendor and supplier relationships;

6. reservation history and customer loyalty;

7. intellectual property and proprietary culinary concepts;

8. Chef Matt Baker's continued leadership and reputation.

108.    Liquidation would permanently destroy these assets and substantially diminish the value otherwise available to creditors.

109.    Continuation of this Chapter 11 case preserves the opportunity to monetize those assets through resumed operations rather than through liquidation of furniture, fixtures, equipment, and inventory alone.

## The Estate Possesses a Significant Pending Insurance Claim

110.    The Debtor has submitted a substantial insurance claim arising from damage allegedly sustained to estate property during the seizure, transportation, handling, and storage of the Debtor's operating assets.

111.    The claim remains pending and represents a potentially significant asset of the bankruptcy estate.

112.    Should the claim be resolved favorably, those proceeds may provide additional funding for a Chapter 11 plan and materially increase distributions available to creditors.

113.   Dismissal of this case before resolution of that claim could unnecessarily complicate administration of this valuable estate asset and reduce the overall value available for distribution.

**The Debtor Has Demonstrated a Concrete Path Toward Financial Rehabilitation**

114.   Unlike Chapter 11 cases in which rehabilitation depends solely upon speculative future events, the Debtor has identified multiple independent sources from which reorganization may reasonably be achieved.

115.   Those include:

1.   the pending insurance recovery;

2.   ongoing negotiations with Meraki Hospitality pursuant to the executed term sheet attached as Exhibit C;

3.   continued centralized administrative support through 101 Hospitality;

4.   preservation of the Gravitas leasehold and operating platform;

5.   future operating revenues following reopening.

116.   Although each of these components remains subject to further development, together they establish a realistic and identifiable path toward rehabilitation rather than mere speculation.

**The Debtor Has Continued to Make Measurable Progress Throughout This Case**

117.   The Trustee's Motion necessarily evaluates the Debtor based upon conditions existing when the Motion was filed.

118.   Since that time, however, the Debtor has continued to move this case forward.

119.    Specifically, the Debtor has:

1.  amended its Schedules and Statement of Financial Affairs;

2.  continued filing Monthly Operating Reports;

3.  provided additional financial information to the Office of the United States Trustee;

4.  prepared and filed its Application to Employ Counsel;

5.  documented and pursued the pending insurance claim;

6.  continued restructuring discussions with Meraki Hospitality;

7.  prepared supporting declarations and exhibits;

8.  continued development of a Chapter 11 plan.

120.    These actions demonstrate continuing progress rather than abandonment.

**Creditors Are Better Served By Rehabilitation Than By Immediate Dismissal**

121.    Perhaps most importantly, continuation of this Chapter 11 case preserves opportunities that simply will not exist if the case is dismissed.

122.    If the case proceeds, creditors may benefit from:

1.  insurance proceeds;

2.  investment capital;

3.  future operating revenues;

4.  preservation of enterprise value;

5.  continued operation of a nationally recognized business;

6.   increased distributions under a confirmed Chapter 11 plan.

123.   If the case is dismissed, many of those opportunities may disappear permanently.

124.   The Bankruptcy Code favors rehabilitation where a debtor demonstrates a reasonable likelihood of restoring operations and maximizing creditor recoveries.

125.   The record before this Court demonstrates precisely those circumstances.

126.   Accordingly, even if the Court were to determine that technical cause exists, the unusual circumstances present in this case, together with the Debtor's continuing progress toward rehabilitation, warrant denial of the Trustee's Motion.

## CONTINUATION OF THIS CHAPTER 11 CASE BEST SERVES THE INTERESTS OF THE ESTATE AND ITS CREDITORS

127.   Ultimately, the question before the Court is not whether the Debtor encountered administrative challenges during the early stages of this emergency Chapter 11 proceeding. Rather, the question is whether dismissal at this time will maximize value for creditors and the bankruptcy estate.

128.   The Debtor respectfully submits that it will not.

129.   Unlike many Chapter 11 cases in which the debtor possesses few meaningful assets beyond property subject to liquidation, Gravitas has demonstrated the existence of multiple identifiable sources of potential value that remain capable of materially increasing creditor recoveries if afforded a reasonable opportunity to mature.

130.   Those sources include:

1.   preservation of a nationally recognized Michelin-starred restaurant and its substantial going-concern value;

2. a pending insurance claim representing a potentially significant estate asset;

3. active restructuring discussions supported by an executed term sheet with an experienced hospitality investment group;

4. centralized administrative support and operational expertise available through 101 Hospitality LLC;

5. the continued involvement and leadership of Chef Matt Baker;

6. the opportunity to generate future operating revenues through the reopening of Gravitas; and

7. the ability to formulate and confirm a Chapter 11 plan that provides creditors with distributions from multiple sources rather than liquidation proceeds alone.

131. These opportunities simply do not exist in the event of immediate dismissal.

132. Dismissal would likely terminate investor negotiations, impair the value of the pending insurance claim as a practical matter, eliminate the possibility of preserving Gravitas as a going concern, and significantly reduce the overall value available for distribution to creditors.

133. Conversely, allowing this Chapter 11 case to proceed provides the Debtor with an opportunity to complete ongoing restructuring efforts under the continuing supervision of this Court and the Office of the United States Trustee. Creditors remain protected throughout that process through the reporting requirements imposed upon debtors-in-possession, continued oversight by the United States Trustee, and the requirement that any Chapter 11 plan ultimately satisfy the confirmation requirements of the Bankruptcy Code.

134.     The Debtor recognizes that confirmation of a Chapter 11 plan is not guaranteed. Nor does the Debtor ask the Court to speculate regarding the ultimate success of every restructuring effort presently underway. Rather, the Debtor respectfully requests only the opportunity that Chapter 11 was designed to provide—the opportunity to preserve a viable business, complete ongoing restructuring efforts, realize the value of significant estate assets, and propose a confirmable plan that offers creditors a greater recovery than liquidation.

135.     This request is particularly appropriate where the Debtor has demonstrated continued good-faith efforts to comply with its obligations as debtor-in-possession, has substantially addressed the concerns identified by the United States Trustee, has documented a realistic pathway toward rehabilitation, and has presented evidence of tangible opportunities that may materially enhance recoveries available to creditors.

136.     Under these circumstances, the balance weighs decisively in favor of allowing this Chapter 11 case to continue.

137.     **WHEREFORE,** For all of the foregoing reasons, Debtor respectfully requests that this Court:

1. Deny the United States Trustee's Motion to Dismiss or Convert;

2. Permit the Debtor to continue administering this Chapter 11 case as a debtor-in-possession;

3. Grant the Debtor such additional time as the Court deems appropriate to complete ongoing restructuring efforts, pursue the pending insurance claim, continue negotiations with Meraki Hospitality, and file a confirmable Chapter 11 plan; and

4.  Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

**WALTON LAW GROUP, LLC**

/s/ Charles E. Walton
**Charles E. Walton, Esq.**
Bar No. 474873
10905 Fort Washington Road, Suite 201
Fort Washington, Maryland 20744
(301) 292-8357
cwalton@cwaltonlaw.com
Counsel for Debtor